[Civ. No. 70085. Second Dist., Div. One. May 17, 1984.]

In re the Marriage of JOAN and HAROLD L. JUSTICE.
JOAN JUSTICE, Respondent, v.
HAROLD L. JUSTICE, Appellant.

**COUNSEL**

Stillman, Green & Shinee and Marianne B. St. John for Appellant.

Allred, Maroko, Goldberg & Ribakoff and Roberta Brown for Respondent.

**OPINION**

**LILLIE, Acting P. J.**—Joan and Harold Justice were married in 1958. On August 6, 1962, Harold was employed by the Los Angeles Police Depart-

ment; he remained in that employment throughout the marriage. In 1979 the parties separated and Joan commenced proceedings for dissolution of the marriage. On June 25, 1981, interlocutory judgment of dissolution was entered approving a property settlement agreement executed by the parties. Pursuant to such agreement the judgment awarded to Joan as her separate property (inter alia) "[a]n amount equal to one-half of 16.6/20 of the amount Respondent would receive upon his retirement on August 6, 1982 from the Los Angeles Police Department when his Pension Plan at the Los Angeles Police Department vests, and said payments to be made by Respondent to Petitioner on August 6, 1982, and on the 6th day of each and every month thereafter, whether or not Respondent elects to retire on August 6, 1982."[1] On June 10, 1982, as the result of gunshot wounds sustained in 1974 in the course of his employment, Harold was retired from active duty with the police department[2] and was granted a service-connected disability pension in the initial amount of $2,931.55 per month. On August 6, 1982, Harold refused to pay to Joan any sum pursuant to the formula set forth in the judgment arguing that he was receiving a disability pension rather than the service pension to which he would have been entitled if he had continued to work until August 6, 1982.

On August 18, 1982, Joan filed a motion to compel payment to her of half the community interest in Harold's "retirement and/or disability payments." The motion was granted and an order was signed and filed directing the Board of Pension Commissioners of the City of Los Angeles[3] to pay directly to Joan an amount equal to 50 percent of 16.6/20 of the amount Harold would have received had he retired August 6, 1982, on a service

---

[1]The formula for computing the community interest in Harold's retirement benefits apparently was arrived at as follows:

Number of years of marriage during which retirement credits were earned (from Aug. 6, 1962 [date of employment] to Mar. 24, 1979 [date of parties' separation]): 16.6

Number of years of service required for vesting of pension: 20

Community interest in pension: $16.6/20$

[2]Harold argues that he was "involuntarily" retired for disability arising from personal injuries sustained in an onduty shooting in January 1974 and in an onduty traffic accident in May 1980.

A member of the Los Angeles Police Department may be retired for service-connected disability either upon his application (voluntary retirement) or upon request of the head of the department (involuntary retirement). (Los Angeles City Charter, § 190.12, subd. (a).) The record does not show whether Harold's disability retirement was voluntary or involuntary.

In his declaration Harold stated: ". . . I received a disability medical pension due to wounds that I received as a result of being shot." Nothing in the record supports Harold's argument that the disability for which he was retired was attributable as well to personal injuries sustained by him in an onduty traffic accident six years after he suffered the gunshot wounds.

[3]The board of pension commissioners was joined as a claimant in the dissolution proceeding. (Civ. Code, §§ 4363, 4363.1.)

pension. Harold's motion for a "new trial" and his motion to vacate the order were denied. He appeals from the order.[4]

At the outset we dispose of two arguments made by Harold on his motions in the trial court and renewed on appeal. ■ Harold contends that because the judgment awarded to Joan one-half of the community interest in his service retirement benefits and did not reserve the court's jurisdiction over any disability retirement benefits to which he might have become entitled, the court was without jurisdiction to "divide" Harold's disability pension by postjudgment order. The contention is without merit. A judgment entered in a marital dissolution proceeding "may be enforced by the court . . . by such . . . order or orders as the court in its discretion may from time to time deem necessary." (Civ. Code, § 4380.) The postjudgment order enforces the judgment by securing to Joan her share of the community interest in Harold's service retirement benefits; the order does not by its terms award to Joan any portion of Harold's disability pension.

■■ ■■■ Harold further argues that the order is void because it was made by a court commissioner who was not authorized by stipulation of the parties to act as a temporary judge, as required by the California Constitution.[5] ■ This contention, too, lacks merit. The dissolution proceeding was tried by Commissioner Majors acting as temporary judge pursuant to stipulation of the parties which read in part: "It is stipulated between the undersigned attorneys and parties that said commissioner or any other commissioner appointed, as set forth above, shall hear the action sitting as a judge pro tempore. [¶] It is further stipulated that said commissioner, or any other commissioner appointed as set forth above, shall by this signed document be vested with the authority to hear any future or further proceedings or further hearings, or the trial in this case whether contested or uncontested, as a judge pro tempore without prejudice to either party appearing at a subsequent date or at such new hearing or trial and

---

[4]Such postjudgment order, which relates to enforcement of the judgment, is appealable. (See Code Civ. Proc., § 904.1, subd. (b); *Merritt v. J. A. Stafford Co.* (1968) 68 Cal.2d 619, 622 [68 Cal.Rptr. 447, 440 P.2d 927]; *Redevelopment Agency v. Goodman* (1975) 53 Cal.App.3d 424, 429 [125 Cal.Rptr. 818].)

Although the order was not directed to Harold, he is an "aggrieved" party entitled to appeal therefrom (Code Civ. Proc., § 902) because his rights or interests are injuriously affected by the order in an immediate, pecuniary and substantial manner. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [488 P.2d 953]; *Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 153 [154 Cal.Rptr. 676].)

[5]"On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.)

Under this provision a court commissioner may act as temporary judge only when the parties to the proceeding stipulate that he may do so. (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 360 [110 Cal.Rptr. 353, 515 P.2d 297].)

withdrawing the continuing authority contained herein." Commissioner Calof, acting as a temporary judge, heard and granted Joan's motion and made the postjudgment order. The stipulation, which gave Commissioner Calof such authority, was not withdrawn by the parties and was in effect when he heard the motion and made the order. We turn now to the merits of Harold's appeal.

■ ■ ■■ ■ Citing *In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420], Harold contends that the disability retirement benefits are his separate property because his right to a service pension had not vested when he was retired for disability.[6] *Jones* held that a married serviceman's right to disability pay, acquired before he has earned by longevity of service a vested right to retirement pay, is not a community asset subject to division upon dissolution of marriage. (13 Cal.3d at p. 461.) The principle underlying that holding was overturned by *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 420], wherein it was held that both vested and nonvested pension rights derived from employment during marriage constitute community assets. As the Supreme Court explained in *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 785 [148 Cal.Rptr. 9, 582 P.2d 96]: "At the time *Jones* was decided, however, we deemed the community interest in a nonvested retirement pension a mere expectancy, and not a property interest. [Citation.] Since Jones retired before his right to a 'retirement' pension vested, his acceptance of 'disability' pay did not affect any present community asset, but merely prevented an expectancy from coming into fruition. . . . [¶] One year following our decision in *Jones* we overturned past precedent and held in *In re Marriage of Brown, supra,* 15 Cal.3d 838, that pension rights, whether or not vested, constituted a property interest; that to the extent that such rights derive from employment during coverture, they now comprise community assets. This holding undermines the fundamental premise of *Jones*: that the award of a serviceman's 'disability' pension to the serviceman as his separate property would not impair any community interest of his spouse. Under current law— in contrast to the law prevailing when *Jones* was decided—both the non-

---

[6] In dissolution cases, the term "vested" refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)

Section 190.11 of the Los Angeles City Charter provides: "Any [pension] system Member under the age of 70 years who shall have 20 years of service or more shall be retired by order of the Board from further active duty as a [Police] Department Member either (a) upon the filing of his written application therefor or (b) upon the filing of a written request therefor by or on behalf of the head of the department in which he is a Department Member . . . ."

The board of pension commissioners interprets such provision to mean that a member's entitlement to a service pension vests only upon his completion of 20 years of service which, in Harold's case, would have occurred on August 6, 1982.

vested retirement pension in *Jones* and the husband's vested right to a 're-tirement' pension in the present case constitute valuable community assets deserving of judicial protection."

In *Stenquist, supra,* 21 Cal.3d 779, husband married six years after join-ing the army. Three years after the marriage he suffered a service-related injury resulting in amputation of his left forearm. He nevertheless remained in the army for 17 more years, ultimately retiring after 26 years of military service. At that time he had the choice of taking regular retirement pay at the rate of 65 percent of his basic pay, or taking disability pay equal to 75 percent of basic pay. Assuming that the husband desired the higher amount, the army began making disability payments to him. Four years after his retirement the husband commenced proceedings for dissolution of the mar-riage. The court rejected husband's claim that his entire disability pension was his separate property under *Jones,* and held that only the excess of the disability pension over the alternative retirement pension represented addi-tional compensation attributable to husband's disability; the balance of the pension rights acquired during the marriage served to replace ordinary re-tirement pay and thus was a community asset. The court gave two reasons for such holding. First, permitting husband to elect a disability pension and thus defeat the community interest in his right to a longevity pension would violate the principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse. Sec-ond, " 'only a portion of husband's pension benefit payments, though termed "disability payments," is properly allocable to disability. It would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension fund benefits.' [Ci-tations.]" (*In re Marriage of Stenquist, supra,* 21 Cal.3d at pp. 786-787.)

In the present case, unlike the situation in *Stenquist,* Harold at the time retirement did not have a sufficient number of years of service with the police department to enable him to choose between a service (longevity) pension and a disability pension. ■ However, the second factor sup-porting the *Stenquist* decision is pertinent here, i.e.: the separate or com-munity character of a "disability" pension is not determined by its label, but by its primary function or objective once its recipient reaches normal retirement age. (*In re Marriage of Webb* (1979) 94 Cal.App.3d 335, 342 [156 Cal.Rptr. 334].) "The purpose of disability benefits, as we explained in *Jones,* is primarily to compensate the disabled veteran for 'the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market' (13 Cal.3d at p. 459) and secondarily to compensate him for the personal suffering caused by the disability. Military retired pay based on disability, however, does not serve those purposes exclusively. Because it replaces a 'retirement' pen-

sion, and is computed in part on the basis of longevity of service and rank at retirement, it also serves the objective of providing support for the serviceman and his spouse after he leaves the service. Moreover, as the veteran approached normal retirement age, this latter purpose may become the predominate function served by the 'disability' pension." (*In re Marriage of Stenquist, supra,* 21 Cal.3d at p. 787.) ▆▆ Applied to the instant case, these factors compel the conclusion that a portion of Harold's disability pension is community property.

Under the Los Angeles Police Department retirement system, a member's "normal pension base" (City Charter, § 190.02, subd. (s)) is used to determine both the amount of a service pension and the amount of a service-connected disability pension: The monthly service retirement benefit is computed by applying to the normal pension base a percentage determined by the length of the retiree's service (§ 190.11); the monthly disability retirement benefit is computed by applying to the normal pension the percentage of the retiree's disability (§ 190.12, subd. (a)). No police officer, while retired for a service-connected disability, may be paid a service pension. (*Ibid.*) It thus appears that a police officer's disability pension is intended to replace service retirement benefits as well as to compensate the officer for economic loss and personal suffering occasioned by his disability. The former purpose doubtless is the predominate function served by Harold's disability pension in view of the fact that he continued to work for eight and a half years after he sustained personal injuries in the line of duty and was retired on a disability pension less than two months before he would have been eligible to retire on a service pension.

When the order was made from which Harold appeals, he was receiving a disability pension of $3,201.25 per month ($2,931.55 representing 65 percent of his normal pension base of $4,510.08, plus $269.70 representing a 9.2 percent cost-of-living adjustment). Had he retired August 6, 1982, upon completion of 20 years of service, he would have received a service pension of $1,804.03 per month (40 percent of his normal pension base). Only the sum of $1,397.22—the excess of the "disability" pension over and above what he would have received as a service pension—is Harold's separate property attributable to compensation for disability. The balance of $1,804.03 performs the function of normal service retirement benefits which, although not vested when Harold was retired for disability, are community property to the extent they were earned during the marriage. (See *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 422 [174 Cal.Rptr. 493, 629 P.2d 1]; *In re Marriage of Brown, supra,* 15 Cal.3d 838, 842.) The order of the trial court properly directed the board of pension commissioners to pay to Joan a sum equal to half of the community interest in such retirement benefits computed in accordance with the formula set forth by the

parties in their property settlement agreement, approved by the court, and incorporated in the interlocutory judgment.

The order is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 18, 1984.