**Patricia F. PFLIGER, Plaintiff and Appellee,**

v.

**Richard A. PFLIGER, Defendant and Appellant.**

**Civ. No. 900001.**

Supreme Court of North Dakota.

Oct. 2, 1990.

Wheeler Wolf, Bismarck, for plaintiff and appellee; argued by Steven L. Latham.

Kapsner and Kapsner, Bismarck, for defendant and appellant; argued by Carol Ronning Kapsner.

**434**

MESCHKE, Justice.

Richard Pfliger appealed from a divorce decree dividing property. We remand for reconsideration of the allocation of debts, with discretion in the trial court to adjust the property division and spousal support correspondingly. In all other respects, we affirm.

After their marriage in 1960, Patricia and Richard Pfliger lived, farmed, and raised sheep on land close to Bismarck. For many years, this was on land purchased from Richard's mother. Like many farmers, Patricia and Richard endured financial straits in the 1980's and deeded that land to the mortgagee in 1985 to avoid foreclosure. They then moved their mobile home to a quarter-section of land that Patricia had recently inherited from her father's estate, where they continued to farm and raise sheep.

Each spouse sometimes worked away from home during the marriage. Then in 1985 Richard began full-time employment with the U.S. Department of Agriculture. The trial court determined that, in early 1988 "[f]or whatever reason, [Richard] began associating with his secretary and the parties discontinued any meaningful personal relationship." Patricia moved to Bismarck and sued for divorce.

Three of their six children were still minors and they stayed with Patricia. The trial court placed their uncontested custody with Patricia and ordered Richard to pay her child support of $750 per month, $250 for each child, and to maintain medical insurance for them.

Patricia hoped to attend college for an accounting degree, and she sought spousal support to enable her to do so. At the time of the divorce, Patricia was working for the Catholic Diocese of Bismarck and earning $11,160 annually. Richard was working for Federal Crop Insurance and earning $35,580 annually. Patricia and Richard could not agree on spousal support.

Patricia and Richard disagreed widely about values in their pre-trial listings of property. Farm equipment and sheep were valued at $20,490 by Patricia and at $10,400 by Richard. In addition, Patricia listed over $12,000 in farming proceeds "taken by" Richard, while Richard claimed those amounts were "disbursed for farming purposes." A 3.3 acre lot, given to Patricia by her father in 1977, was valued at $495 by Patricia and at $10,000 by Richard. Patricia's inherited quarter-section was valued at $16,000 by Patricia and at $123,420 by Richard. They did not agree on division of the property.

At the trial, neither spouse presented independent evidence of values except for Patricia's quarter-section. An appraiser for Patricia testified that the market value of her quarter-section was $39,725, including $8,000 for the mobile home. Richard tendered no opinion evidence about the market value of the quarter-section, but instead, to "demonstrate to the court it will generate income to" Patricia, his appraiser testified only about its rental value. Richard's appraiser opined that the 155 acres of pasture would generate annual rentals of $1,860, that the improvements on the farmstead (including a pole barn, grain bins, and corrals) would generate annual rentals of $1,800, and that the mobile home would generate annual rentals of $2,160, predicting total rentals of $5,820 annually.

From the tenor of the testimony, the trial court felt that "[t]here appears to be little, if any, genuine controversy over the award of the property." The trial court commented:

> The real estate involved was inherited by [Patricia] from her parents. [Richard] has a lamb operation in addition to his permanent position with the federal government and has some farm machinery. The primary issue raised is whether [Patricia] should receive any rehabilitative spousal support for purposes of returning to college.

The trial court awarded the divorce to Patricia and ordered Richard to pay Patricia $1,000 for attorneys fees and $200 per month for four years as spousal support because "[Patricia] is limited unless she can secure future education," and because, "[o]bviously, [Richard's] potential earning power is far greater than that of [Patricia]."

To divide property, the trial court gave each spouse "the personal property presently in his or her possession," and distributed to Richard the farm equipment, the sheep, and the mobile home. The trial court distributed "the real property inherited from her father's estate" to Patricia in order to "allow her to receive some income in addition to her present earnings and the child support she receives." The judgment allocated debts in excess of $7,000 to Patricia and in excess of $24,000 to Richard. The trial court did not make any findings about values of the property distributed, and did not determine the net marital worth.

The judgment directed award of costs to Patricia. Patricia filed a bill of costs itemizing $745. Richard objected that "taxation of costs is beyond the scope of the relief intended by the trial court."

Richard moved to alter or amend the judgment. Richard asked that he be allowed to pay support in two equal installments each month, that he be allowed to list the minor children as his tax dependents, and that Patricia be ordered to file a joint income tax return with him for 1988. Richard's motion also urged that the court had not awarded costs to Patricia beyond $1,000 in attorney fees, that the judgment did not equitably divide the property, and that the judgment was "not based upon any Findings of Fact which would permit a reviewing court to determine whether an equitable division of property had been made."

Richard acknowledged to the trial court that he had "suggested an unequal division of property in lieu of spousal support" through distribution of the "income producing asset" to Patricia for "approximately $500.00 per month" rental income. He argued that Patricia's quarter-section was "income generating because of the improvements made during the marriage." Using his own valuations, including a new figure of $45,000 for her quarter-section, Richard claimed that Patricia received more than $50,000 in net property besides spousal support, while he received, after debts, a negative $12,000 net amount. According to

Richard, there was "nothing ... equitable in such a result." Richard recognized that the trial court had adopted Patricia's proposed distribution as it was "obviously free" to do, but Richard urged that the trial court "must explain why that resolution is equitable."

For a "more equitable" property division, Richard sought either "an uneven property division and no spousal support" or "an equal division of property if spousal support was awarded." The only changes that Richard proposed specifically were that the 3.3 acre lot be transferred to him, the mobile home be transferred to Patricia, and $9,000 in debts and costs be shifted to Patricia. Patricia resisted Richard's revision, stressing that one of their sons, not Richard, had made most of the improvements on the quarter-section.

The trial court ruled that the court had allowed costs to Patricia as "the prevailing party," that the court had "not ruled upon any costs which may be allowable," and that the court "presently [had] nothing before [it] to make such a determination." The trial court authorized Richard to pay support in two equal installments each month, authorized Richard to claim the three children as tax dependents "provided he is current in his child support," and suggested that Patricia join in the 1988 income tax return if Richard paid her $600 and if "she is satisfied that the information ... is correct and ... has no objections to the content." The trial court refused to change the spousal support or property division. The court explained:

The variance in the distribution of the property of the parties was made for the following reasons: The real estate inherited by [Patricia] from her parents was improved primarily through the efforts of her son rather than [Richard] ...; The testimony regarding the income producing value of the property inherited from [Patricia's] father was suspect in this Court's opinion, and the Court did not believe it. I believe it was overly high and the income she shall receive was much lower; The income-producing potential of [Richard] is far greater than

that of [Patricia] and she needed such property to make this an equitable distribution.

The amended judgment taxed the $745 costs previously itemized, and Richard filed no further objections to the costs.

Richard appealed. He contends that the trial court assessed costs improperly, failed to determine the net marital equity, and failed to equitably divide property.

■ To review a property division, we need to understand the reasons for the trial court's decision. *Blowers v. Blowers*, 377 N.W.2d 127, 129 (N.D.1985). Findings of fact that disclose the reasons for the trial court's decision aid appellate review. *Id.* Still, an express finding on every possible factor is not necessary. *Id.* When the trial court fails to fully explain a property division, we will not upset it if the reasons are fairly discernible by deduction or inference. *Id.* For the most part, we comprehend the trial court's reasons in this case.

■ Richard argues that "the property division, supposedly justified by the income earning disparity of the parties, overlooks the fact that that income earning disparity is *totally eliminated* by the flow of support from Richard ... to Patricia ... for her benefit and that of the minor children." (Our emphasis). This exaggerates. Nothing demonstrates that the disparity in the spouses' earning power was wholly offset by the decreed support.

■ A difference in earning power is a proper factor both for dividing property and for prescribing spousal support. *Nastrom v. Nastrom*, 284 N.W.2d 576, 582 (N.D.1979). Sources of income, in addition to earnings, are important in setting the amount of support for a disadvantaged spouse. *Roen v. Roen*, 438 N.W.2d 170, 172 (N.D.1989). For these reasons, property division and spousal support often need to be examined and dealt with together. That is true here.

Yet, Richard did not appeal the award of spousal support. He asks us to review the property division apart from the rehabilitative support award. Nor could Richard have realistically appealed spousal support because, today, $2,400 per year is a slender contribution toward a college education. We cannot review the property division in this case in isolation from spousal support.

The trial court ruled that Patricia "needed such property to make this an equitable distribution" in order to "allow her to receive some income in addition to her present earnings and the child support she receives." Richard has not marshalled the evidence to demonstrate that the scheduled support, also scheduled to dwindle, is sufficient for living and rehabilitation, and to fairly offset Patricia's economic disadvantages from the divorce, even considering the modest rent expected from the pasture and farmstead improvements in addition to her lesser earnings. Richard's claim that the decreed support "totally eliminated" any disparity in incomes as a factor for division of property is unjustified and unsupported. Rather, the trial court's main reason for favoring Patricia in the property division was to "allow her to receive some income in addition to her present earnings" and support.

Anticipating the force of fault as another discernible reason for the property distribution, Richard rationalizes the breakup of this marriage. Citing *Bader v. Bader*, 448 N.W.2d 187, 190 (N.D.1989), Richard argues that a spouse's romantic involvement after the marriage is broken should not disqualify that spouse from the "usual considerations" for property distribution. Richard tries to tell us that it was not until "[a]fter separation from Patricia" that he became "romantically involved with another woman." He seeks to shift the blame to Patricia because, when she "became suspicious that her husband was having an affair," she "responded by first moving out of the bedroom." We are unpersuaded.

The trial court plainly attributed marital fault to Richard: "For whatever reason, [Richard] began associating with his secretary and the parties discontinued any meaningful personal relationship." A majority of this court has held that non-economic fault, as well as economic fault, is a proper factor for dividing property. *Davis*

v. *Davis*, 458 N.W.2d 309, 316 (N.D.1990). Fault is a factor discernible in this decision.

 The trial court must equitably distribute all of the property of divorcing spouses. NDCC 14-05-24. The trial court must consider all relevant factors and guidelines. *See Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). Unless circumstances make it unnecessary, the trial court should determine the net worth of the spouses. *Seablom v. Seablom*, 348 N.W.2d 920, 925 (N.D.1984). The findings need not value each item of property. *VanRosendale v. VanRosendale*, 333 N.W.2d 790 (N.D.1983). A property division need not be equal to be equitable, but a substantial inequality should be explained. *Heggen v. Heggen*, 452 N.W.2d 96, 99 (N.D.1990). Two factors, Richard's greater earning power and his greater fault, largely explain this division favoring Patricia.

Although Patricia's inherited quarter-section was the principal asset, Richard did not seek an interest in it at trial and does not specifically do so on appeal. Yet, much of his appellate effort focuses on the unfairness of its distribution to Patricia in addition to spousal support. Richard makes three points: (1) The trial court was "in error in assuming that the real property was all inherited from Patricia's father" because the 3.3 acre lot was gifted by deed to both spouses; (2) her quarter-section was substantially improved "by the parties" after it was acquired; and (3) "other property ... [from] Richard's family was sacrifi[c]ed during periods of financial stress in order to preserve this property." These arguments do not overbalance the trial court's assigned reasons.

 The trial court understood that all real estate was marital property for equitable distribution, even that gifted and inherited. All property of the spouses, whether jointly or separately acquired or owned, must be distributed. *Routledge v. Routledge*, 377 N.W.2d 542, 549 (N.D. 1985). The fact that the deed gifting the 3.3 acre lot also named Richard does not, by itself, make the trial court's distribution inequitable. The trial court may properly consider the source of the property in arriving at an equitable distribution. *Id.* The trial court distributed all of the real estate to Patricia "to make this an equitable distribution."

Patricia's quarter-section was improved substantially with electricity, water, corrals, grain bins, and a pole barn which included a heated lambing room. The improvements were made during the marriage. However, except for grain bins moved from the land lost to the mortgagee, the trial court specifically found that her quarter-section "was improved primarily through the efforts of her son rather than" Richard. The evidence supports that finding.

More plausible is Richard's argument that the land purchased from his mother was "sacrificed" to the mortgagee in order to save Patricia's inheritance. This argument was made to the trial court, too, but the trial court made no findings to support the idea. The trial court rejected it. Richard's argument ignores, as well, that Patricia also inherited $13,000 cash that was spent for family purposes during the family's financial straits in the last decade. Since most of the mortgage debt went back to 1968 when the land was purchased, well before Patricia's inheritance, we conclude that the "sacrificial" description of the loss of the land purchased from Richard's family is more superficial than actual.

 Curiously, the only property that Richard asked the trial court to distribute differently would not have made much difference. Richard asked for the 3.3 acre lot that he valued at $7,000, but instead he got the mobile home independently appraised at $8,000. Thus, with the sheep, farm equipment, and 1988 farming proceeds, Richard received most of the income-producing property. The trial court's finding that there was "little, if any, genuine controversy over the award of the property" is understandable. We conclude that the circumstances made it unnecessary for the trial court to determine the net marital equity.

Although exaggerating again, Richard complains about the allocation of debt: "In addition to assigning virtually all of the property to Patricia," the decree "assigned virtually all of the debt to Richard." "Substantial portions of that debt relate to improvements made to the real property assigned to Patricia," according to Richard. His argument really is that it is unfair for Patricia to have the principal remaining asset while he has much of the debt for it.

Richard asked the trial court to reallocate certain costs and debts to Patricia:

| | |
|---|---|
| Elizabeth Wells | $5,000 |
| Tom Hildebrand | 2,000 |
| Burleigh County Land Taxes | 400 |
| Attorney Fees and Costs | 1,745 |
| Total | $9,145 |

The trial court did not give any reasons for allocating debts as it did. Accordingly, we consider Richard's argument about these debts.

 The award of $1,000 in attorneys fees to Patricia was well within the trial court's discretion. Patricia was obligated to her attorneys for much more than that and was economically disadvantaged by the divorce. The trial court has discretion to award costs as well as attorneys fees. *Klitzke v. Klitzke*, 308 N.W.2d 385 (N.D. 1981). We conclude that the trial court properly authorized costs to Patricia as "the prevailing party."

The $2,000 Hildebrand debt arose from moving the mobile home. That item was distributed to Richard. Allocation of that debt to Richard, then, is understandable.

However, according to the evidence, the $5,000 debt to Wells was for materials to build the barn on the quarter-section set aside to Patricia. The taxes of $400 were for the land distributed to Patricia. Not only do these debts affect land awarded to Patricia, but also there is some risk that the burden of these debts may fall on her if Richard neglects to pay them or files bankruptcy. *See Eckert v. Eckert*, 144 Wis.2d 770, 424 N.W.2d 759 (App.1988); *In re Marriage of Clements*, 134 Cal. App.3d 737, 184 Cal.Rptr. 756 (1982).

Therefore, we do not see the reasons for allocating to Richard debts for property apportioned to Patricia.

We remand for the trial court to reconsider its allocation of the $5,400 in debts connected to Patricia's property. Of course, if changing those debts to Patricia will unbalance the trial court's arrangement too much, the trial court has discretion to adjust the property division or spousal support correspondingly. In all other respects, we affirm.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, concur.

LEVINE, J., concurs in the result.