1998 ND 140

**Judy Ann WILHELM, Plaintiff and Appellant,**

v.

**Jeffrey Dean WILHELM, Defendant and Appellee.**

**Civil No. 970376.**

Supreme Court of North Dakota.

July 16, 1998.

Carol S. Nelson and Bradley A. Cruff, Valley City, for plaintiff and appellant; argued by Bradley A. Cruff.

Irvin B. Nodland, Irvin B. Nodland, P.C., Bismarck, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Judy Wilhelm appeals from a judgment setting child support, ordering spousal support, dividing property, and ordering the parties to pay their own attorney fees. We affirm the trial court's child support determination, valuation of in-kind income, and denial of attorney fees. Because the trial court incorrectly calculated the marital estate before dividing the property, we reverse and remand the trial court's division of property and order for spousal support.

I

[¶ 2] Judy and Jeffrey Wilhelm were married on February 12, 1988. Judy Wilhelm was 21 years old, and Jeff Wilhelm was 30; both had previous marriages. They have two children: a daughter born February 23, 1988; and a son, born March 11, 1989. The parties separated permanently in 1995. The trial court granted a divorce based on irreconcilable differences.

[¶ 3] The parties agreed Judy Wilhelm should have custody, and the trial court set a visitation schedule. The trial court calculated $1,400 per month in child support and required Jeff Wilhelm to provide medical insurance and to pay all of his children's uncovered medical expenses. The trial court ordered Jeff Wilhelm to pay Judy Wilhelm spousal support of $250 per month for 48 months. The trial court awarded Jeff Wilhelm his minority interests in three family-owned corporations and the undistributed income of the corporations, ordered the marital home sold and the proceeds evenly divided, awarded Jeff Wilhelm the contract for deed on the "Taylor property" valued at $100,000, awarded Judy the Susag contract-for-deed payment and the tax refunds, awarded the parties their respective 401(k) plans, awarded each party numerous items of personal property, required each to pay certain debts, and ordered the parties to pay their own attorney fees.

[¶ 4] Judy Wilhelm appeals from the October 27, 1997, notice of entry of judgment, which references the October 24, 1997, judgment of the Stutsman County District Court. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 28–27–02. The appeal is timely under N.D.R.App.P. 4(a).

II

[¶ 5] Judy Wilhelm argues the trial court erroneously valued Jeff Wilhelm's in-kind income, in the form of items owned by the corporations and used by Jeff Wilhelm, for the purpose of calculating his child support obligation.

## A

[¶ 6] "Child support determinations are findings of fact, governed under the 'clearly erroneous' standard of review." *Hogue v. Hogue,* 1998 ND 26, ¶ 22, 574 N.W.2d 579. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." *Edwards v. Edwards,* 1997 ND 94, ¶ 4, 563 N.W.2d 394.

## B

[¶ 7] The trial court used a five-year average of Jeff Wilhelm's income to decide his child support obligation because it concluded his position as a minority shareholder made him more like a self-employed person than an employee. Using the five-year average, it found a child support obligation of $1,315. *See* N.D. Admin. Code § 75–02–04.1–10 (showing $4,600 in net income equals $1,315 in child support under the guidelines). The trial court recognized Judy Wilhelm's argument Jeff Wilhelm was able to use the corporation's "toys" and increased the child support to $1,400 because of this in-kind income.

[¶ 8] Judy Wilhelm contends this $85 increase in child support means the trial court found the value of Jeff Wilhelm's in-kind income to be $300. *See* N.D. Admin. Code § 75–02–04.1–10 (showing $4,900 in net income equals $1,400 in child support under the guidelines). Judy Wilhelm argues this increase is insufficient in light of Jeff Wilhelm's use of "a brand new 'demo' vehicle, a 1966 Stingray Corvette, a 1984 Jeep CJ–7, a 1974 Volkswagen bug convertible, a 1989 Bayliner boat, motor and trailer, a jet boat, two Arctic Cat snowmobiles and trailer and a 4 wheel all terrain vehicle. All insured by the corporation and used by Jeff at no cost to him." Judy Wilhelm contends Jeff Wilhelm's "in-kind income should be valued at $2,000 per month" for a total child support obligation of $1,879. *See* N.D. Admin. Code § 75–02–04.1–10 (showing $6,600 in net income ($4,600 + $2,000) equals $1,879 in child support under the guidelines).

[¶ 9] Judy Wilhelm's appellate brief, however, acknowledges "these items are inventory that is held for sale or investment," "[t]here was no testimony as to the type of 'demo' that Jeff drives," and "[t]here was no testimony regarding the value of the use of this stable of toys." In addition, Judy Wilhelm submitted to the trial court proposed findings of fact in which she proposed child support of only $1,484 per month—well below the $1,879 she seeks on appeal. Because the trial court had no evidence before it of the value of the items Judy Wilhelm seeks to have included as in-kind income, Judy Wilhelm's assertion the trial court's valuation of the in-kind income is clearly erroneous is without merit.[1] We affirm the trial court's child support determination.

## III

[¶ 10] Judy Wilhelm contests the level of spousal support ordered to be paid by Jeff Wilhelm and also contests the trial court's division of property.

## A

[¶ 11] "[P]roperty division and spousal support are interrelated, and often must be considered together." *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 16, 574 N.W.2d 790. In *Hogue v. Hogue,* we restated the standard of review for spousal support determinations:

Determinations of spousal support are findings of fact, and the trial court's determination will not be set aside unless it is clearly erroneous. A finding is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support a finding, or if, although there is some evidence to support it, on the entire evidence, we are left with a firm conviction a mistake has been made.

When making a spousal support determination, the trial court must consider the relevant factors under the *Ruff–Fis[c]her* guidelines. Considered under the *Ruff–Fis[c]her* guidelines are: " 'the respective

---

1. In fact, there was no evidence presented about the value of the items Judy Wilhelm seeks to have valued as in-kind income. Jeff Wilhelm did not appeal this issue.

ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.' " The trial court is not required to make specific findings, but it must specify a rationale for its determination.

1998 ND 26, ¶¶ 24–25, 574 N.W.2d 579 (citations omitted). Our standard of review for property division is similar: " 'The trial court must make an equitable distribution of the marital property, based upon the facts and circumstances of each individual case. The court's determinations on valuation and division of property are findings of fact that will only be reversed on appeal if they are clearly erroneous.' " *Lohstreter*, at ¶ 16 (citations omitted).

## B

[¶ 12] In its discussion of spousal support, the trial court emphasized: "Judy is economically disadvantaged, seeks rehabilitation, and the shortness of the length of the marriage. The length of the marriage leans towards little or no spousal support while the reduction in salary and rehabilitation lean toward an award." The trial court awarded $250 per month for 48 months to "assist Judy in this transitory time of her life and . . . help pay for some of her schooling."

[¶ 13] In its discussion of the property division, the trial court noted the great difference in incomes: Jeff Wilhelm earned between $80,000 and $100,000 annually, and Judy Wilhelm earned about $10,000. The trial court also stated neither has "any marital property that is of an income producing

nature." The trial court concluded it would "*award premarital property to each. The guidelines do not dictate a less than equal division of property.* They do direct that Judy receive spousal support. . . ." (Emphasis added).

## 1

[¶ 14] In determining spousal support, the trial court was properly concerned with Judy Wilhelm being economically disadvantaged, and also properly considered the relatively short duration of the marriage. *See, e.g., Fenske v. Fenske*, 542 N.W.2d 98, 103 (N.D.1996). Judy Wilhelm, however, contends the trial court, while recognizing the disparity between the parties' earnings, reduced the spousal support award because she lived with Jeff Wilhelm while still legally married to her first husband. It seems clear the trial court did not punish either party for any indiscretions, because it noted each party's indiscretions (the trial court found Jeff Wilhelm had an affair after the parties separated) and stated: "Such are the days of our lives."

## 2

[¶ 15] In its division of property, the trial court awarded Jeff Wilhelm the Taylor contract-for-deed property and other personal property for a total value of $109,434.[2] Judy Wilhelm was awarded the Susag contract-for-deed payment and other personal property for a total of $67,007.[3] After adjusting for debts, the trial court awarded Judy Wilhelm $39,861, and Jeff Wilhelm $36,979 (not including the half of the equity each was awarded in the house), noting the division was not quite equal because of Jeff Wilhelm's "better earning capacity." This is in line with the trial court's statement the *Ruff–Fischer* "guidelines do not dictate a less than

---

2. This is the amount from the memorandum opinion. In the memorandum opinion Jeff Wilhelm was awarded item 49 from the pretrial conference statement, and it was valued at $50 according to the pretrial conference statement. In the findings of fact, conclusions of law, and order for judgment, however, item 49 was valued at $500. The $50 value listed in the memorandum opinion is clearly the correct value.

3. The memorandum opinion incorrectly lists the value of items 45–48 as $50, instead of $500, as listed in the findings of fact, conclusions of law, and order for judgment. The $500 value listed in the findings of fact, conclusions of law, and order for judgment is clearly the correct one.

equal division of property" and explains the disparity.

[¶ 16] Judy Wilhelm argues, however, the trial court erred when it failed "to initially include Jeff's interests in the family corporations gifted both before and during the marriage, his contributions to his 401(k) pension plan during the marriage, and the appreciation of his corporate interests and 401(k) during the marriage, as assets of the marital estate subject to division . . . ."

[¶ 17] A majority of this Court, in *Young v. Young*, 1998 ND 83, ¶ 12, 578 N.W.2d 111, held:

> The trial court's Memorandum Opinion, dated May 2, 1997, and incorporated by reference into its findings of fact and conclusions of law, awards certain items of property to Gene as "premarital or akin to premarital property of Gene . . . as such" and awards certain items of property to Dorothy "that are akin to premarital property as they are, in a sense, replacements of premarital property" and awards them "as such." It is clear from the trial court's Memorandum Opinion that it never included the "premarital" property in the marital estate. The court initially separates out this property and distributes it and then determines the net value of the marital estate listing its values of the property and the debt. This method of determining the marital estate indicates an erroneous view of the law.

[¶ 18] In this case, the trial court concluded the *Ruff–Fischer* guidelines "do not dictate a less than equal division of property." While the division noted above—$39,861 versus $36,979—was relatively equal, the trial court also awarded Jeff Wilhelm all of his interests in the family corporations, all of

his share of the undistributed earnings from the corporation, and all of his 401(k) plan. While it appears Judy Wilhelm and her trial counsel did little to promote a proper computation of the marital estate, the trial court's division is clearly erroneous because, while an equitable distribution of property need not be equal, all of the real and personal property of the parties, even that accumulated prior to marriage or accumulated by one party through gift or inheritance, must be included in the marital estate before applying the *Ruff–Fischer* guidelines. *See, e.g., Young*, 1998 ND 83, ¶ 10, 578 N.W.2d 111. The trial court's statement about an equal division of property cannot be reconciled with its award to Jeff of all items it deemed to be "premarital," because this would give Jeff substantially more than half of the marital estate.[4] *See id.* ¶¶ 14, 20.

[¶ 19] Thus, while the trial court did equally divide what it included in the marital estate, the failure to include the assets it attributed to Jeff as "premarital" property into the marital estate reflects an erroneous view of the law and, as such, is clearly erroneous; we therefore reverse and remand the trial court's division of property. *See Hogue v. Hogue*, 1998 ND 26, ¶ 24, 574 N.W.2d 579. On remand, the trial court can give appropriate weight to who brought property into the estate in determining an equitable, if not equal, division of property, as long as it initially considers all of the parties' property as part of the marital estate and explains any substantial disparity. *See, e.g., Fisher v. Fisher*, 1997 ND 176, ¶¶ 14–17, 568 N.W.2d 728 (allowing credit for premarital property as long as all property is initially included in the marital estate). *But cf. van Oosting v. van Oosting*, 521 N.W.2d 93, 99 (N.D.1994)

---

4. Although called "premarital," there appears to have been substantial appreciation to items designated "premarital," as well as several large gifts, subsequent to the parties' marriage. *Cf. Young*, 1998 ND 83, ¶ 29, 578 N.W.2d 111 (VandeWalle, C.J., dissenting) (noting "there was very little appreciation or added value during the [20 year] marriage to th[e] property"). Defense exhibit 1 shows Jeff Wilhelm owned $117,000 worth of Don Wilhelm, Inc. stock, $60,000 worth of Wilhelm, Inc. stock, and $33,000 worth of Wilhelm Properties stock at the time of his marriage to Judy Wilhelm. There were additional

gifts of $19,378 in Don Wilhelm, Inc. stock and $20,059 and $23,681 of Wilhelm, Inc. stock, subsequent to Judy and Jeff Wilhelm's marriage. Defense exhibit 2 shows these assets have had a net increase in value of $97,469 since the time of marriage, of which $63,118 is apparently due to the stock gifts and $34,351 is apparently due to appreciation in value. Defense exhibit 1 also shows Jeff Wilhelm's 401(k) plan was worth $18,900 at the time of Judy and Jeff Wilhelm's marriage. Defense exhibit 15 shows his 401(k) to have been worth $60,675 at the time of trial.

(noting "argument that a fifty-fifty division of property is warranted ... is compelling particularly as to gifts received early in the marriage"). Because of the erroneous calculation of the marital estate and the significant disparity in incomes, we also remand the order for spousal support to be considered with the trial court's recalculation of the marital estate and equitable division of property. *See Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990) ("A difference in earning power is a proper factor both for dividing property and for prescribing spousal support.").

## IV

[¶ 20] Judy Wilhelm appeals the trial court's order requiring the parties to pay their own attorney fees.

## A

■ [¶ 21] Attorney's fees may be awarded in a divorce action at the trial court's discretion, and we will not reverse a trial court's decision unless it is affirmatively established that the trial court abused its discretion. *See* N.D.C.C. § 14-05-23; *Hogue v. Hogue,* 1998 ND 26, ¶ 29, 574 N.W.2d 579. In exercising its discretion, the trial court must "balance one party's need against the other party's ability to pay." *Hogue,* at ¶ 30.

## B

■ [¶ 22] Judy Wilhelm argues the trial court should have ordered Jeff Wilhelm to pay her attorney fees because:

Jeff's attorney fees, like his taxes, will most likely be paid by the corporation, or claimed as a tax deductible business expense as legal fees expended in preservation of business property. And with the application of a little business savvy, the corporation will also bear the $3,500 expense of hiring Thomas Holtgrewe, CPA, debt assigned to Jeff. Mr. Holtgrewe was hired to evaluate the value of the corporations, and the corporations can use his report in lieu of their annual valuation process.

As with her argument regarding in-kind income, this argument is purely speculative. While Judy Wilhelm also notes the trial

court's division left her a net worth of approximately $93,000, out of which must come legal expenses of approximately $22,500, she has failed to "affirmatively establish" an abuse of discretion by the trial court. The trial court's order requiring both parties to pay their own attorney fees is affirmed.

## V

[¶ 23] The judgment of the trial court is affirmed in part, reversed in part, and remanded.

[¶ 24] VANDE WALLE, C.J., and NEUMANN, J., concur.

MARING, Justice, concurring.

[¶ 25] I concur in the remand by the majority of the issues of property division and spousal support. I write separately, however, to set forth my reasons for supporting the remand.

[¶ 26] I agree with the majority's analysis that the trial court erred in calculating the marital estate, because it failed to consider the "premarital property" in determining the marital estate. *See Young v. Young,* 1998 ND 83, ¶¶ 10–20, 578 N.W.2d 111. I would add that at trial Jeffrey offered into evidence Defendant's Exhibit 15, which is his proposal for division of the marital estate. His proposal asked the court to award Judy a net distribution of $139,729.06. Nevertheless, the trial court ignored this proposal and awarded Judy a net distribution of $42,742 plus one-half of the net proceeds from the sale of the house, which under optimum circumstances would result in Judy receiving a total net distribution of $99,215 ($42,742 + ($112,946 ÷ 2) = $99,215). This $41,000 discrepancy between the trial court's award and Jeffrey's own proposal is inexplicable.

[¶ 27] The majority correctly states that spousal support and property division are intertwined. Thus, sources of income other than earnings are important in setting the amount of support for a disadvantaged spouse. *See Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990). Judy did not receive any income-producing property in the property division, and based on the nature of the marital property, it is unlikely she will on

remand. The financial circumstances of the parties, however, is only one of the factors to be considered under the *Ruff–Fischer* guidelines. Furthermore, an equitable division of the property may not eliminate the disparity in incomes. On remand the trial court must consider each of the guidelines when setting spousal support, which include:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. *Weir v. Weir*, 374 N.W.2d 858, 862 (N.D.1985).

*Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377. We have stated the trial court does not need to make specific findings as to each guideline, but it must specify a rationale for its determination. *Id.* The trial court specifically concluded Judy was economically disadvantaged by the divorce and in need of rehabilitative support. The trial court, however, was of the opinion the marriage was of short duration which weighed toward little or no spousal support while reduction in her earnings and need for rehabilitation weighed in favor of an award. Judy requested spousal support in the amount of $700/month for 48 months to assist her in returning to college at Jamestown College. She was awarded $250/month for 48 months.

[¶ 28] Judy and Jeffrey were married approximately nine and a half years, from February 12, 1988, to October 24, 1997. Although traditionally this would not be considered a "long term marriage," it can hardly be termed "short term" by today's standards. Further, the length of the marriage should not be viewed as merely a number but rather in the context of the marital relationship. During their marriage they had two children, both of whom are still very young, eight and nine years old.

[¶ 29] A difference in earning power is a proper factor in dividing the marital estate and for setting spousal support. *Pfliger*, 461 N.W.2d at 436. The trial court's findings establish a large disparity in earning capacity. Judy does not have a college degree; Jeff does. Judy's gross income is $10,000/year, whereas Jeff's gross income is between $80,000 and $100,000/year. The record indicates Judy's net monthly income is $600/month. Jeff's net monthly income is $4,562.61. Judy receives $1,400 a month for child support. Her disposable income without spousal support is $2,000/month and with spousal support of $250/month is $2,250/month. This is without consideration of the income tax payable on the spousal support. Jeff's disposable monthly income is $2,910.61 ($4,562.61 - $1,400 child support and - $250 spousal support = $2,910.61). Thus, three people live on less than $2,250/month, whereas one person has at least $2,910.61/month spendable income.

[¶ 30] The record also indicates the parties have lived an affluent lifestyle which included traveling, private school for their children, and a $270,000 home. *See, e.g., Bagan v. Bagan*, 382 N.W.2d 645, 646 (N.D.1986) (concluding standard of living is a valid consideration in spousal support determinations).

[¶ 31] Finally, although Jeff admitted to having an affair during the marriage, the trial court dismissed Judy's argument that such conduct should affect the property distribution or spousal support amount with the statement, "Such are the days of our lives." Yet conduct of the parties during the marriage is a factor the court must consider under the *Ruff–Fischer* guidelines. Although I join those members of this Court who believe only economic fault should be considered relevant, noneconomic fault is still a factor alive and well in North Dakota spousal support and property distribution law. *See Young*, 1998 ND 83, ¶ 14, 578 N.W.2d 111; *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 27, 574 N.W.2d 790; *Bader v. Bader*, 448 N.W.2d 187, 190 (N.D.1989).

[¶ 32] On remand, the trial court must consider all of the relevant factors under the *Ruff–Fischer* guidelines when deciding spousal support, as well as when dividing the

marital estate. Under the facts of this case, an equitable division of the marital estate may not necessarily eliminate the need for further consideration of the spousal support award.

[¶ 33] MARING and MESCHKE, JJ., concur.