2004 ND 210

**Ann Kathleen STRIEFEL, Plaintiff, Appellee, and Cross–Appellant**

v.

**Edward Charles STRIEFEL, Defendant, Appellant, and Cross–Appellee.**

No. 20040072.

Supreme Court of North Dakota.

Nov. 19, 2004.

Todd L. Cresap, Kenner Sturdevant & Cresap, P.C., Minot, ND, for plaintiff, appellee, and cross-appellant.

Gary H. Lee, Olson Burns Lee, Minot, ND, for defendant, appellant, and cross-appellee.

MARING, Justice.

[¶ 1] Edward Charles Striefel appealed and Ann Kathleen Striefel cross-appealed from the judgment entered in their divorce action. We conclude that the trial court's findings of fact about spousal support are not clearly erroneous and the trial court's finding of fact about Edward's CalPERS benefits is contrary to California law. We affirm in part, reverse in part and remand the case to the trial court for further proceedings consistent with this decision.

I

[¶ 2] The parties married in 1986 while they were attending college, and are the parents of two children, who were born in August 1986 and October 1990. Edward began employment with the California Department of Corrections in 1987. In 1992, Edward began to have problems resulting from his pre-existing degenerative hip disease for which he had had corrective surgery in 1982. In 1993, the California Public Employees Retirement System ("CalPERS") approved Edward's request for disability benefits. After Edward was placed on disability status, the family returned to North Dakota. California workers compensation funds paid all of Edward's expenses to complete his college education under a rehabilitation program. Edward's rehabilitation ended when he completed college in May 1994. He then began drawing CalPERS disability benefits, which pay him 50% of his salary for life, tax-free, with a cost-of-living raise each year. At the time of trial, Edward was receiving a monthly payment of $2,219 from CalPERS.

[¶ 3] After Edward graduated from college in 1994, Ann began working outside the home. Ann sued for divorce in December 2002. At the time of the divorce, Ann was an assistant manager at McDonald's earning $22,254 per year. Edward works in the Minot Public School system and earns about $14,000 per year. When they divorced, Edward was 39 years old and Ann was 36.

[¶ 4] After trial, the trial court: (1) found that "[w]ith $26,000 of his $40,000 annual income tax exempt, Edward effectively has an annual income twice that earned by Ann. Thus, it goes without saying that Edward will find it much easier to 'make ends meet' in the post-divorce era than will Ann;" (2) found the gross value of the marital estate was $101,460 and the marital debt was $103,300; (3) found the CalPERS payments are marital property; (4) concluded "the primary purpose of the monthly CalPERS benefits Edward presently receives did not come about until he completed his rehabilitation, and so the

CalPERS benefits are that of an early retirement program payment and meant to replace the regular longevity based retirement program payments had Edward remained or returned to work, and not taken early retirement;" and (5) found Ann should receive "one-fourth of whatever Edward's CalPERS benefits are in the future." The court found Ann is a disadvantaged spouse and also found her to be capable of rehabilitation:

> Based on the assets available for division in this case, Edward's earning ability, Ann's departure from MSU and her absence from the workforce during the parties['] marriage, the 20 plus year period until Ann reaches the typical age of retirement, the modest standard of living the parties enjoyed during their marriage, and the present disparity in the parties' earning abilities, the equitable division of marital property, all together strongly indicate that Ann, who is a healthy high school graduate with management experience, is capable of rehabilitation.

[¶ 5] The judgment (1) granted the parties a divorce; (2) granted the parties joint custody of the children, with Edward having primary physical custody and Ann having reasonable visitation; (3) ordered Ann to pay child support of $723 per month, starting February 1, 2004, and $492 per month, starting September 1, 2004, based on her projected monthly net income of $2,538; (4) ordered Edward to pay Ann rehabilitative spousal support of $400 per month from February 1, 2004, through August 1, 2004, and $200 per month from September 1, 2004, through October 2008; (5) awarded Ann "one-fourth of Edward's CalPERS benefits which are payable now and in the future;" and (6) divided the parties' other property and debts.

[¶ 6] Edward appealed, contending the trial court's findings that the CalPERS payments were divisible marital property and that Ann is a disadvantaged spouse entitled to spousal support are clearly erroneous. Ann cross-appealed, contending the trial court's award to her of only one-fourth of Edward's CalPERS payments is clearly erroneous.

## II

[¶ 7] "When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14–05–24. Although a property distribution need not be equal to be equitable, the trial court must explain a substantial disparity. *Reineke v. Reineke*, 2003 ND 167, ¶ 5, 670 N.W.2d 841. "A homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution." *Fox v. Fox*, 1999 ND 68, ¶ 7, 592 N.W.2d 541. In dividing marital property in a divorce action, the trial court normally starts with an equal distribution of the property, *Sommers v. Sommers*, 2003 ND 77, ¶ 6, 660 N.W.2d 586, and must explain a substantial disparity in the property division, *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d 601. "A trial court's determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous." *Reineke*, at ¶ 5. Section 14–05–24.1, N.D.C.C., authorizes a trial court in a divorce case to "require one party to pay spousal support to the other party for any period of time." A trial court's spousal support determination is reviewed as a finding of fact and will be overturned only if clearly erroneous. *Reineke*, at ¶ 7. Property division and spousal support ordinarily must be dealt with together. *Id.*

[T]he *Ruff–Fischer* guidelines apply to both property division and spousal support, which ordinarily must be consid-

ered together, and a trial court's spousal support and property division determinations are findings of fact that are subject to the clearly erroneous standard of review. Under the *Ruff–Fischer* guidelines, the following factors should be considered:

> the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Shields v. Shields,* 2003 ND 16, ¶ 7, 656 N.W.2d 712 (quoting *Mellum v. Mellum,* 2000 ND 47, ¶ 15, 607 N.W.2d 580).

*Reineke,* at ¶ 8.

 [¶ 8] " 'A trial court's findings of fact are presumptively correct, and we view the evidence in the light most favorable to the findings.' " *Reineke,* 2003 ND 167, ¶ 12, 670 N.W.2d 841 (quoting *Schmidt v. Schmidt,* 2003 ND 55, ¶ 5, 660 N.W.2d 196). "The burden is on the complaining party to demonstrate on appeal that a trial court's finding of fact is clearly erroneous." *Marschner v. Marschner,* 2002 ND 67, ¶ 4, 642 N.W.2d 857. " 'We . . . do not reweigh evidence or reassess credibility if there is evidence supporting the trial court's findings.' " *Oldham v. Oldham,* 2004 ND 62, ¶ 13, 677 N.W.2d 196 (quoting *Kautzman v. Kautzman,* 2002 ND 118, ¶ 12, 647 N.W.2d 684). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Oppegard–Gessler v. Gessler,* 2004 ND 141, ¶ 7, 681 N.W.2d 762.

### A.

 [¶ 9] Edward contends his CalPERS benefits are disability benefits and the trial court's finding that they are divisible marital property is clearly erroneous.

 [¶ 10] "[P]ensions and retirement benefits are marital assets subject to equitable distribution by the court." *Fox v. Fox,* 1999 ND 68, ¶ 9, 592 N.W.2d 541. However, "disability payments do not constitute marital property, because they are intended as replacement for income the disabled spouse would be earning currently and would be able to earn in the future had the spouse not become disabled." *Id.*

[¶ 11] The California Supreme Court in *In re Marriage of Stenquist,* 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96, 103 (1978), concluded military retirement pay based on disability has two components: (a) compensation for loss of earning power and personal suffering, and (b) retirement support. The court further concluded that the retirement support component, "to the extent that it is attributable to employment during marriage, is community property." *Id.* A disability pension recipient's continued work after retiring on a disability pension is evidence that the pension's purpose to replace retirement benefits predominates over the pension's purpose to compensate for the economic loss and personal suffering occasioned by his disability. *See In re Marriage of Justice,* 157 Cal. App.3d 82, 204 Cal.Rptr. 6, 10 (1984):

> It thus appears that a police officer's disability pension is intended to replace service retirement benefits as well as to compensate the officer for economic loss and personal suffering occasioned by his

disability. The former purpose doubtless is the predominate function served by Harold's disability pension in view of the fact that he continued to work for eight and a half years after he sustained personal injuries in the line of duty and was retired on a disability pension less than two months before he would have been eligible to retire on a service pension.

*See also In re Marriage of Webb,* 94 Cal. App.3d 335, 156 Cal.Rptr. 334, 338 (1979) ("*Stenquist* compels us to look behind labels and determine the primary objective of a 'disability' pension once its recipient reaches normal retirement age" and "the objective of providing support for the retiree may become the predominant function served by the 'disability' pension, notwithstanding its label."). Thus, we look at the purpose being served by a "disability" pension at the time benefits are being paid.

[¶ 12] The California courts agree with North Dakota law that disability benefits are not marital property, and that retirement benefits are marital property. However, if the benefits received continue beyond retirement age, they are considered to have two functions—one to replace lost earnings during disability and the other to provide income in retirement. When considering benefits that serve such a dual purpose, the California courts have generally held that upon the recipient becoming eligible to retire, the predominant purpose of the "disability" pension is to provide the recipient support, and, thus, the benefits are then considered marital property. *See In re Marriage of Stenquist,* 148 Cal.Rptr. 9, 582 P.2d at 100–102; *In re Marriage of Justice,* 204 Cal.Rptr. at 10; *In re Marriage of Webb,* 156 Cal.Rptr. at 338. The California courts, in concluding whether "disability" benefits are disability or retirement benefits at the time

paid examine the "predominate function" served by the benefit. In *Stenquist* and in *Justice,* the recipients continued to work after the disability occurred and did not draw benefits during that time, but waited until they were eligible for retirement. In *Webb,* the recipient had been receiving disability benefits for approximately nine years, and, at the time of his divorce trial, he was operating a private investigation business. In all three of these cases, the court concluded that once the recipient was eligible for retirement, the benefits were retirement benefits and became marital property.

[¶ 13] In the present case, Edward's CalPERS benefits have attributes of both disability benefits and longevity-based retirement benefits. Edward testified the only thing he has for retirement when he reaches retirement age is what he gets from CalPERS and the only qualification for that benefit is injury on the job. When his attorney asked if Edward's monthly benefit was a retirement benefit or a disability benefit, the CalPERS Benefit Services Division responded with a letter stating that "Mr. Striefel's monthly benefit is a retirement benefit." On his 2002 income tax return, Edward listed his occupation as "RETIRED." Edward is unable to work as a corrections officer. Edward is otherwise employable and is employed part-time. He did not begin receiving CalPERS benefits until after he had completed receiving his college degree in criminal justice. His entitlement to these benefits results from his injury and his years of work as a corrections officer, all of which were during his marriage. The trial court was not presented with any other evidence about the factual nature of his CalPERS benefits. The parties did not present the trial court with argument about the legal nature of the CalPERS benefits under California law. The parties did not present any evidence of the actuarial value of

the CalPERS benefits. Recognizing the lack of evidence upon which to value the CalPERS benefits over Edward's lifetime, the trial court assigned a nominal value, and awarded Ann "one-fourth of whatever Edward's CalPERS benefits are in the future." The trial court also concluded that the CalPERS benefits were intended to replace retirement benefits.

[¶ 14] We conclude the trial court's finding that "the primary purpose of the monthly CalPERS benefits Edward presently receives did not come about until he completed his rehabilitation, and so the CalPERS benefits are that of an early retirement program payment and meant to replace the regular longevity based retirement program payments had Edward remained or returned to work and not taken early retirement" is contrary to California law. We conclude as a matter of law the benefits Edward presently receives are disability benefits and are his solely. However, we further conclude that at the time Edward is eligible to retire under the California statutes governing his CalPERS benefits, the benefits become retirement benefits and are marital property subject to division.

[¶ 15] Our conclusion is not inconsistent with our decision in *Fox v. Fox*, 1999 ND 68, 592 N.W.2d 541. *Fox* involved a disabled 60–year–old man who was receiving disability payments which would terminate when he reached age 65 and were clearly intended only as replacement for income he would have received before reaching retirement age had he not become disabled. In the instant case, the trial court found that Edward's benefits were not terminable upon reaching normal retirement age, and were payable to him for the rest of his life. Our Court's other decisions holding disability benefits are not marital property involve Social Security disability payments and military disability

payments, which we concluded were governed by Congressional actions prohibiting alienation and preempting state domestic relations law. *See Kluck v. Kluck*, 1997 ND 41, ¶¶ 30–32, 561 N.W.2d 263; *Vitko v. Vitko*, 524 N.W.2d 102, 103 (N.D.1994). Therefore, these decisions are also not inconsistent with our conclusion. We, therefore, reverse and remand. Upon remand the trial court should make an equitable division of the marital property consistent with this decision, including a determination of how the CalPERS benefits should be divided when Edward is eligible for retirement.

## B.

[¶ 16] Edward contends the trial court's finding that Ann is a disadvantaged spouse entitled to spousal support is clearly erroneous. A spouse who foregoes opportunities or loses advantages as a consequence of the marriage and who contributed during the marriage to the supporting spouse's increased earning capacity is a disadvantaged spouse. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 40, 673 N.W.2d 601. "Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status, *Gregg* [*v. Gregg*, 1998 ND 204], at ¶ 20, [586 N.W.2d 312], by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting." *Greenwood v. Greenwood*, 1999 ND 126, ¶ 9, 596 N.W.2d 317.

[¶ 17] Throughout the time that Edward was working in the California prison system, earning a right to receive lifetime income from the CalPERS, and while his earning capacity was being rehabilitated by completing his college education, with all his expenses paid for by California workers compensation funds, Ann main-

tained the parties' home and cared for their children, contributing to Edward's increased earning capacity, remaining out of the workforce, foregoing the opportunities and advantages that paid work generates, losing the increased earning capacity that work experience provides, and losing the opportunity to create a right to lifetime retirement benefits like Edward receives. With the disparity in the parties' incomes, it is clear, as the trial court noted, that "Edward will find it much easier to 'make ends meet' in the post-divorce era than will Ann." There is evidence supporting the trial court's finding that Ann is a disadvantaged spouse and entitled to spousal support, and the finding is not clearly erroneous. However, to the extent the trial court's award of spousal support is intertwined with its property division, the court may reconsider its spousal support award on remand. *See, e.g., Wilhelm v. Wilhelm*, 1998 ND 140, ¶ 19, 582 N.W.2d 6.

### C.

[¶ 18] Ann contends the award to her of only one-fourth of Edward's CalPERS benefits and the trial court's failure to explain the disparity are clearly erroneous.

[¶ 19] In light of our conclusion that CalPERS benefits are presently paid as disability benefits and are Edward's solely, and that they are retirement benefits and marital property upon his becoming eligible for retirement, we do not reach this issue.

### III

[¶ 20] The trial court's findings that Ann is a disadvantaged spouse entitled to spousal support are affirmed and the trial court's finding that Edward's CalPERS benefits are solely marital property is reversed. The judgment is, therefore, reversed in part, affirmed in part

and remanded to the trial court for further proceedings to equitably divide the marital property and to award spousal support consistent with this decision.

[¶ 21] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ, concur.

DALE V. SANDSTROM, concurring.

I concur in the result