Filed 9/15/20  Marriage of Palacio and Ayala CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CENDY PALACIO and JUAN AYALA. | |
| CENDY PALACIO, | F075883 |
| Respondent, | (Super. Ct. No. VFL243178) |
| v. | |
| JUAN AYALA, | **OPINION** |
| Appellant; | |
| ALFREDO AYALA et al., | |
| Appellants. | |

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Miller & Ayala and Mary E. Ayala for Appellant Juan Ayala.

Wanger Jones Helsley, Scott D. Laird and Jay A. Christofferson for Appellant Alfredo Ayala.

Tritt & Tritt and James F. Tritt for Appellants Ayala Orchards, Inc., and Western Orchard Harvest, Inc.

Williams, Brodersen, Pritchett & Burke and Steve R. Williams for Respondent.

-ooOoo-

In a marital dissolution proceeding between Juan Ayala and Cendy Palacio, the family court granted Cendy's motion to join to the proceeding two corporations owned by Juan and his brother, Alfredo Ayala, namely, Ayala Orchards, Inc. (Ayala Orchards) and Western Orchard Harvest, Inc. (Western Orchard) (collectively, the Corporations).[1] Cendy claimed the shares Juan held in the Corporations were community property subject to distribution in the proceeding. On the eve of trial, Juan and Cendy entered into a settlement that required them to divide Juan's shares in the Corporations in kind, and a stipulated judgment was entered.

When Cendy could not effect the transfer of her interest in the shares in accordance with the judgment, she filed a motion to enforce the judgment against Juan and the Corporations. During the course of that proceeding, Cendy learned the Internal Revenue Service (IRS) had given notice of its intent to levy against the shares Juan held in Ayala Orchards for payment of taxes, and to satisfy the debt, Juan sold Alfredo the shares in both Corporations that were awarded to Cendy, without notice to her and without her consent. Cendy moved to join Alfredo to the enforcement proceeding on the ground he was a necessary party because he held the shares in the Corporations that Juan had been holding in trust for Cendy pending enforcement of the judgment, and Alfredo acquired the stock by fraudulent conveyance. The family court granted the motion.

Juan, Alfredo, and the Corporations each separately appeal from the order granting the joinder motion. Juan and Alfredo contend the family court erred when it ordered Alfredo joined to the proceeding, as the criteria for joinder was not satisfied. The Corporations do not challenge Alfredo's joinder; instead they argue there is no basis to

---

[1]    To avoid confusion, we refer to some individuals by their first names. No disrespect is intended.

enforce the stipulated judgment against them. Finding no merit to the appellants' arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cendy and Juan married in March 1996. Cendy petitioned for legal separation in July 2011, almost nine months after she separated from Juan. Juan responded with a request to dissolve the marriage. In July 2014, the family court entered a judgment of dissolution as to status only nunc pro tunc to March 24, 2014. Jurisdiction was reserved over all other issues, including the division of marital assets.

### *The Corporations are Joined as Parties*

In August 2014, Cendy moved to join the Corporations as parties to the proceeding on the ground they possessed, controlled, or claimed to own property subject to disposition by the family court.

In her moving and reply papers, Cendy explained Juan and his brother Alfredo started Ayala Orchards in 2006, with each being a 50 percent shareholder. In February 2010, just prior to the parties' separation, Juan transferred 20 percent of his interest in the company to Alfredo for no consideration. Since the separation, Juan received at least $80,000 from Ayala Orchards for his personal expenses. Despite claimed financial hardship, Ayala Orchards maintained at least $700,000 in cash and showed a cash account in excess of $7 million in 2012, yet hundreds of Ayala Orchards' land remained fallow and unused. Throughout the litigation, Ayala Orchards, through Juan and Alfredo, downplayed Juan's interest in the company, even firing him as an employee. Similarly, Juan and Alfredo started Western Orchard in 2007, with each owning half of the company. In 2011, Juan transferred 30 percent of his interest in Western Orchard to Alfredo for no consideration. Cendy argued joinder of the Corporations was necessary, not only to allow the case to come to a final judgment, but also to preserve the Corporations as community assets. Juan opposed the motion.

3.

In October 2014, the family court granted Cendy's request to join the Corporations, finding they possessed property subject to the family court's jurisdiction and were necessary parties both to the litigation and to enforce the family law judgment that eventually would be issued. The family court authorized the issuance of a summons and complaint against the Corporations. The complaint contained a single cause of action for declaratory relief which alleged Juan acquired community property interests in the Corporations, the value of which he intentionally reduced during the marriage by transferring his ownership interest and assets without her consent, and an actual controversy existed between herself and the Corporations. Cendy requested a judicial determination of her and the community's interests in the Corporations, and asked the court to find she and the community were entitled to Juan's ownership interest in them.

In January 2015, the Corporations filed an answer denying the allegations of the complaint and that Cendy had an ownership interest in the Corporations.

***The Stipulated Judgment***

A judgment on the reserved issues was filed on January 22, 2016 (the judgment), based on a stipulation reached in open court on July 31, 2015, just days prior to trial on the merits.[2] As pertinent here, the judgment provided that Juan held 30 percent of the shares in Ayala Orchards and 20 percent of the shares in Western Orchard, which would "be divided in kind by the parties." The parties were equally responsible for any liability associated with his or her ownership of shares in each company. The judgment also provided that Cendy and Juan were equally responsible for all recorded federal tax liens estimated at $4,243,992.33, and all recorded California tax liens estimated at $370,603.55. In addition, they were equally responsible for all later discovered federal and California tax obligations that were then unknown to them.

---

[2] Cendy, who had been represented by counsel through most of the proceedings, represented herself at the July 31, 2015 settlement conference.

***Cendy's Motion to Enforce the Judgment***

On July 21, 2016, Cendy, through her attorney Steven Williams, filed a motion to enforce the judgment and transfer one-half of Juan's shares to her. She personally served notice of the hearing on the Corporations. Cendy sought the actual stock certificates, the transfer agent's identifying information, and an assignment of her one-half interest of the total number of community shares.

Cendy asserted that in March 2016, her attorney wrote the Corporations' counsel asking to inspect all records regarding the businesses in which Cendy had an interest. The Corporations' counsel, William F. Hancock, Jr., responded he had not received anything stating Cendy was a shareholder in the Corporations, and he understood both Corporations had restrictions on the transfer of shares, with the Corporations having the first right of purchase. Another attorney for the Corporations, G. Bryan Pinion, also responded, stating Cendy was not entitled to inspect the corporate records, as she was not listed on the shareholder ledger, and in order to allow the requested inspection, his client needed something more than the family court judgment, such as a declaratory relief order. Cendy contended the Corporations were parties bound by the judgment, as they had been joined in the action, and although the judgment divided the shareholder interests between she and Juan, the Corporations suggested they had no obligation to do so.

In her memorandum of points and authorities, Cendy asserted Juan refused to consent to the order and instead intended to deprive her of her share of community property specifically awarded to her. Cendy pointed out the judgment, which was prepared by Juan's counsel, specifically provided the shares "will be divided in kind by the parties," yet Juan refused to do so and instead asserted she was seeking relief beyond the judgment's scope. Juan's attorney claimed Cendy did not have the right to become a shareholder because the Corporations' bylaws granted the Corporations the right to restrict the transfer of shares to unwanted outsiders, thus Juan would need to retain the stock as a fiduciary until he sold it, when the money could be divided. Cendy argued

5.

there was no merit to Juan's contentions and asked the family court to order the transfer of her share of the stocks Juan held.

Cendy and her attorney, as well as Juan's attorney, appeared at the August 24, 2016 hearing on Cendy's request. Juan was not present in court. The family court recalled from the settlement hearing that the stock was to be divided in kind, which was borne out by the hearing transcript, and it did not believe it dismissed the Corporations, although it told the corporate lawyer he did not need to be present for trial. Juan's attorney, Mary Castro-Ayala,[3] told the court Juan did not respond on the merits because he was not willing to waive the defective service of the motion, as he was not personally served. Castro-Ayala informed the court the IRS had given notice of intent to levy the shares in Ayala Orchards the following Monday if the $4.5 million debt was not paid.[4] Castro-Ayala asserted Juan could not transfer the shares because the Corporations' bylaws restricted the transfer, and the settlement agreement was not enforceable against the Corporations because they were not present and did not agree to it. The family court instructed Castro-Ayala to accept service for Juan and continued the matter to October 27, 2016, so all parties could file a response.

Cendy's attorney filed a reply declaration, with documents attached.[5] Between August 24 and 29, 2016, Williams wrote both Castro-Ayala and Hancock several times concerning the Corporations. Williams asked the attorneys for copies of the Corporations' documents, which related to any restrictions on the transfer of shares, and asked Hancock to verify whether Juan was a shareholder in Ayala Orchards. Williams asked the attorneys to explain how the Corporations were statutory close corporations

---

[3]   We note that Mary Castro-Ayala and Mary E. Ayala are the same person.

[4]   Castro-Ayala provided the court with a copy of the IRS notice, dated August 12, 2016, which discussed seizure and sale of the stock in Ayala Orchards.

[5]   The other parties' responses are not in the record.

since, according to the California Secretary of State's report, the articles did not state the Corporations were close corporations. Williams also asked Castro-Ayala to explain her claim that Ayala Orchards was a statutory close corporation, as its bylaws were silent on that issue.

Juan and Cendy, as well as their attorneys and Hancock, appeared at the October 27, 2016 hearing. It appeared to the family court the crux of the matter was the existence of the buy-sell provisions, which would govern the transfer, but the court did not see them, and it seemed Juan and his brother had gotten together to perpetrate a fraud on Cendy and perhaps the court. The court asked Hancock to explain the buy-sell provisions. Hancock responded he was not the attorney of record when the corporate documents were drafted, he had invited Cendy to have her attorney contact him because there were some issues regarding the Corporations, and he came to court on the day of the settlement conference, but he was dismissed. After that, he heard nothing until he learned of the judgment that was entered without notice to him. The court stated Hancock had notice of the proceedings and an opportunity to be heard, as he appeared at the hearing, and while the court let him go after he asked to be excused, he could have stayed if he wanted.

Hancock admitted he "was somewhat involved" with the transfer of securities between Juan and Alfredo, but another corporate attorney "handled all the tax issues and all that information." The court asked Hancock what provision of the bylaws authorized that transfer. Hancock answered there was a 2013 amendment to the bylaws that provided for the transfer. Castro-Ayala confirmed no one previously produced the 2013 amended bylaws, as such amendments had not been asked for during discovery. Neither Castro-Ayala nor Hancock had the 2013 amendments with them; the attorney who represented the corporation in that matter, Bryan Pinion, had the documents.

The family court asked why the amendment was not produced with Alfredo's declaration, which had been filed in response. Hancock answered that if someone had

7.

asked him before the judgment was entered, he would have voluntarily provided the amendment. Hancock added the judgment did not say anything about the Corporations or tell them to produce anything, and they took no part in the stipulated judgment. The court responded that was because he was the corporation, and the judgment was between two parties who owned private security in what had been characterized as "S corporations." Castro-Ayala told the family court she previously referred to the Corporations as close corporations based on a conversation she had with Cendy's prior attorney, but she still understood there were transfer restrictions. The court stated that since the Corporations were not close corporations, it would not be a problem to add Cendy as a shareholder, except for the buy-sell provisions in the amendment.

Hancock repeated his recollection that he offered Cendy or her attorney to contact him regarding certain issues, but that never happened, and all of a sudden the settlement was done, which he did not participate in. The written agreement was between the two parties, not the Corporations, and if the Corporations had been included in the negotiation or the written agreement, "it would have been brought to light back then." The court responded: "Then let me make it clear that it's my findings you had an opportunity to be here. You had notice of the settlement conference. You weren't here. You didn't want to be here."

Williams was amazed at where they were, as he had sent numerous faxes and letters asking for these documents, but Juan and the Corporations took the position they did not have to share them because it was postjudgment. Williams stated the judgment divided the shares, but Juan sold Cendy's shares to his brother, thereby converting her stock in violation of the Family Code.

About the transfer of shares to Alfredo, Castro-Ayala explained there were provisions in the bylaws that allowed Alfredo to purchase shares in Ayala Orchards upon receiving a notice of levy, which is what he did when the IRS levied against Juan's shares. Ayala Orchards, in turn, paid the money from the sale to the IRS. Therefore,

8.

one-half of the debt that Cendy was responsible for was paid. The court asked why they did not transfer the shares to Cendy and then invoke the purchase option so everyone could see what was happening. Castro-Ayala responded that did not happen because Juan could not transfer the shares to Cendy once he received the IRS's notice of levy.

The family court ordered Juan to produce the buy-sell provisions and amended bylaws, unredacted IRS levy notices,[6] and updated income and expense declarations from the parties.

On November 11, 2016, Cendy was served with the documents, which included the December 2013 minutes of the annual meeting of the Corporations' board of directors and shareholders (namely, Juan and Alfredo), and which were identical for both Corporations. The minutes stated a motion was passed amending the Corporations' bylaws to provide that upon written notice or service of a levy, the shareholders who were not being levied against had the option to purchase the shares of stock subject to the levy, and to set forth the terms and conditions for such a purchase, including the method of determining the purchase price.

### Cendy's Motion to Join Alfredo as a Party

On November 23, 2016, Cendy filed a motion to join Alfredo to the proceeding, as well as each corporation's stock transfer agent. Williams signed the declaration of joinder, in which he asserted Alfredo and Juan purportedly amended the Corporations' bylaws to provide for transfer restrictions on December 13, 2013, without notice to Cendy. The stipulated judgment divided the shares in each corporation, held solely in Juan's name, equally between Cendy and Juan. In August 2016, the IRS gave Juan notice of its intent to levy against the shares he held in Ayala Orchards for payment of taxes. In September 2016, when the motion to require transfer of the shares in

---

[6] Williams stated the first time Cendy received notice of the IRS levy was at the August 24, 2016 hearing, when he was handed a redacted copy of the notice.

9.

accordance with the judgment was pending, Juan "sold" Alfredo the shares awarded to Cendy, without her knowledge or consent, and used the proceeds to pay the tax, which the recorded lien releases showed were Juan's separate liability.

Williams asserted Alfredo was a necessary party because he held shares of the Corporations' stock that Juan had been holding in trust for Cendy pending the stock transfer ordered in the judgment. Williams further asserted Alfredo acquired the stock by a fraudulent conveyance and was not a bona fide purchaser for value. Williams alleged Alfredo knowingly participated in the fraud and improper amendment of the Corporations' bylaws in violation of the California Securities Act. As for the stock transfer agents, Williams stated the Corporations previously were joined as parties to the action and appeared by counsel, judgment was served on the Corporations prior to Juan's sale of the stock to Alfredo, and Juan had no right to the sell the shares awarded to Cendy. Williams stated the identity of the stock transfer agents was unknown.

Juan filed a responsive declaration stating he did not consent to the joinder motion. In his memorandum of points and authorities, and attached declaration, Juan asserted he objected to Alfredo being joined to the action because (1) the form of the motion was improper, (2) the motion was procedurally defective as a matter of law, and (3) Cendy failed to satisfy any of the joinder criteria. Juan argued the motion was procedurally defective because Cendy did not submit her declaration with the motion, Williams' declaration was insufficient to support the motion, and she did not submit a complaint setting forth her claims against Alfredo. In addition, he believed it was improper to bring a motion for joinder after judgment was entered.

Juan asserted it was unnecessary to join Alfredo as a party in order to pay Cendy her share of any proceeds she was assigned in the property division. He claimed Cendy failed to establish Alfredo had control over community assets as: (1) Alfredo purchased shares in the Corporations after receiving notice of the IRS levy; (2) the IRS was going to foreclose on the shares to pay outstanding tax debt Juan and Cendy owed for past taxes;

10.

(3) Alfredo purchased pursuant to a valid lien on the shares held for the corporation; (4) there was a bona fide good faith transfer of shares from the community to Alfredo to pay community taxes; and (5) all the money realized from Alfredo's purchase was paid directly to the IRS. Juan further claimed Alfredo was not a necessary or indispensable party, as judgment had already been entered regarding the community shares of each corporation; neither Alfredo nor the Corporations were parties to the judgment; and the community's interests in the Corporations were sold to pay community tax debt. Finally, Juan argued the family court did not have subject matter jurisdiction over Cendy's fraudulent conveyance claim.

The Corporations joined in Juan's opposition. They argued the family court lacked jurisdiction to join parties after final judgment had been entered. They asserted it was Cendy's intent to (1) conduct posttrial and postjudgment discovery, which she and her attorneys had ample time to do prior to entry of judgment, (2) "cherry pick" the benefits of the judgment and avoid its obligations, (3) add parties so the judgment could be modified to include an order or judgment against new parties, (4) penalize the Corporations by requesting attorney fees, costs and sanctions, and (5) entice the court to inappropriately extend its authority to accomplish these goals. They further argued Cendy must first show an existing judgment or order against the Corporations or Alfredo in order to join Alfredo for the purpose of enforcing the judgment, and the only parties to the judgment were Cendy and Juan, as no other party was ordered to do anything.

In her reply, Cendy asserted that while the family court had the power to set aside the judgment, the family court did not need to do so because the issue was the characterization of tax obligations, which could easily be rectified by assigning the tax liability to the party liable for it. Cendy argued this was clearly a case of fraud, with Juan repeatedly failing to disclose information he was legally obligated to disclose.

At the January 18, 2017 hearing, Williams argued Juan converted the shares allocated to Cendy when he sold them to Alfredo. He asked the family court to modify

11.

the judgment's terms to reflect that the tax liability was Juan's separate debt. In addition, he asked the court to join Alfredo to the case because he was holding Cendy's shares, so Cendy could file an action against he and Juan for conversion and fraudulent transfer. Hancock and Castro-Ayala argued the tax liability was community debt, and Castro-Ayala argued Cendy had constructive and actual notice of the liens. The family court stated if there was fraud, it was not because Cendy did not know about the liens, but rather because the shares were sold fraudulently.

With respect to the joinder motion, Castro-Ayala argued Alfredo was not a necessary and indispensable party because he did not possess community shares, as he was a bona fide purchaser of the shares under the amendments to the bylaws, and the IRS levy was valid. The family court, however, had a question as to the veracity of the documents used as the basis for those transfers and did not have any information as to how the purchase price was calculated. Hancock asserted those documents had never been requested properly, noting the documents had not been subpoenaed.

The family court did not find a basis to set aside or modify the judgment. The court, however, felt that but for the failure to file a complaint for joinder, there was good cause to join Alfredo, as there was a possible postjudgment fraudulent transfer of shares. The court believed Alfredo controlled the shares and he was indispensable to determine whether a fraudulent transfer occurred, and he was a bona fide purchaser. The court, however, could not join Alfredo because a complaint had not been submitted. A written order subsequently was issued denying Cendy's request to set aside the judgment.

### Cendy's Renewed Motion to Join Alfredo

On January 23, 2017, Cendy filed a new notice of motion and declaration for joinder, seeking to join Alfredo and the Corporations' stock transfer agents. The declaration was signed by Cendy and contained the same facts as in the original motion. Cendy also filed a complaint for joinder against Alfredo, which alleged: (1) Cendy disputed Alfredo's and Juan's claim that Alfredo purchased the shares from Juan for at

12.

least their fair market value and was a bona fide purchaser; (2) the shares Alfredo held were the property of Cendy and Juan; and (3) Cendy was not provided notice of the intended sale and did not consent to it.

The complaint further alleged: (1) Juan violated Family Code sections 721, 2040, and 2102, when he sold the shares to Alfredo; (2) Juan violated Family Code section 2100, subdivision (c), as well as his duty of disclosure, when he adopted the minutes and sold the shares to Alfredo; (3) Alfredo knowingly participated in a "sale" of the shares in December 2013 and August/September 2016, when he purchased the shares from Juan; and (4) Alfredo knowingly aided and abetted Juan when Juan violated the Family Code.

The complaint sought the following declarations: (1) Juan did not have the right, power or authority to transfer the shares to Alfredo; (2) Juan transferred the shares in violation of the fiduciary duty he owed Cendy; (3) Alfredo was not a bona fide purchaser of the shares; (4) Alfredo held the shares as a constructive trustee for Cendy's benefit; (5) Juan converted Cendy's interest in the shares; (6) Juan conspired with Alfredo to deprive Cendy of her rightful property; and (7) Alfredo aided and abetted Juan to deprive Cendy of her rightful property. The complaint also sought delivery of the shares or, if not available, the value of the shares, for damages resulting from the conversion, and punitive damages.

Juan opposed the motion. Juan argued the motion was procedurally defective because Cendy did not include a copy of the complaint with her pleadings that set forth the claims she was making against Alfredo. He further argued the family court did not have subject matter jurisdiction over the fraudulent conveyance claim Cendy was alleging against Alfredo, and Cendy failed to allege facts sufficient to constitute a cause of action for fraudulent conveyance. Finally, Juan argued Alfredo did not have control of community assets and the shares were not assets that could be the subject of a fraudulent conveyance.

13.

The Corporations joined in Juan's opposition. The Corporations repeated their arguments from their prior opposition, arguing the family court lacked jurisdiction to join parties after final judgment was entered, and there was no existing judgment against the Corporations or Alfredo. The Corporations further argued they never received notice of the motion.

In reply, Cendy argued Alfredo was a proper party to be joined, as he possessed the shares in the Corporations that he procured pursuant to "stock sales provisions adopted under highly suspicious circumstances years after this matter was initiated, without notice to [Cendy], and years before the judgment was entered, without disclosure as required by law, before judgment was entered." Cendy asserted the issues as to the Corporations were procedural compliance and the valuation of the transferred shares. As to Ayala Orchards, even if the adoption of the minutes was binding on Cendy and the parties followed the procedural requirements for adopting them, there remained the issue of the fair market value of the shares, and Juan and Alfredo were the parties in possession and control of the records, with Alfredo holding the shares. As to Western Orchard, the sale could only take place if there was an outstanding levy of those shares, and there was nothing to suggest Juan's Western Orchard shares were being levied against. Without that, the sale was void and Alfredo held title to shares which were ordered transferred to Cendy and belonged to her as her separate property.

At the May 10, 2017 hearing, the family court asked Williams whether they were "just joining the entities" at that point. Williams responded they were joining the individual, as "[t]he entities have already been joined." Hancock argued the judgment was final as to the Corporations, as the issues alleged in the new complaint were completely litigated and judgment had been entered. The Corporations' position, therefore, was that they were "out" and could not be rejoined because the judgment was

14.

final as to them.  The family court believed California Rules of Court, rule 5.24,[7] was controlling and allowed for joinder of anyone who claimed or controlled any subject matter in the proceeding, and the postjudgment transfers were not put into issue with the prior pleadings.  The court considered the factors in rule 5.24 and found that, without joinder, it would not be possible to resolve the disposition of all the community assets and would complicate matters.  While the court recognized joinder of third parties in family law cases was not common, there was no dispute Alfredo received assets and stocks of the Corporations, and under Family Code section 2021, he controlled an asset subject to the family court's jurisdiction.  The court found Alfredo to be an indispensable party to the determination of whether a fraudulent transfer occurred and joinder was the appropriate remedy for making that determination.[8]

In written findings, the family court stated it granted the request to join Alfredo, as he was a necessary party to the litigation since he possessed property subject to the court's jurisdiction.  That property was the parties' community assets, namely, the shares of stock in the Corporations awarded equally to the parties by the judgment, which Juan unilaterally transferred to Alfredo after entry of judgment, without notice to Cendy and without her consent.  The complaint was served on Alfredo on May 30, 2017.

## DISCUSSION

### I.     Juan's and Alfredo's Appeals

Juan and Alfredo both challenge the family court's grant of Cendy's motion to join Alfredo to the proceedings to enforce the judgment.

---

[7]     Further references to rules are to the California Rules of Court.

[8]     The minute order of the hearing states the court received and read additional documents filed concerning the "Motion for Joinder as to Alfredo Ayala, Ayala Orchard, Inc., and Western Orchard Harvest, Inc.," and following the attorneys' comments and arguments, it granted the motion.

## A.    *The Law of Joinder and Standard of Review*

Family Code section 2021 permits the family court to "order that a person who claims an interest in the proceeding be joined as a party to the proceeding in accordance with rules adopted by the Judicial Council . . . ." Rule 5.24 implements the statute and provides: "A person who claims or controls an interest in any matter subject to disposition in the proceeding may be joined as a party to the family law case only as provided in this chapter." It allows the petitioner or respondent in a family law action to apply "for an order joining a person as a party to the case . . . who has in his or her possession or control or claims to own any property subject to the jurisdiction of the court in the proceeding." (Rule 5.24(c)(1).)

Joinder may be mandatory or permissive. (Rule 5.24(e).) Permissive joinder is at issue here. It allows the court to "order that a person be joined as a party to the proceeding if the court finds that it would be appropriate to determine the particular issue in the proceeding and that the person to be joined as a party is either indispensable for the court to make an order about that issue or is necessary to the enforcement of any judgment rendered on that issue." (Rule 5.24(e)(2).)

"In deciding whether it is appropriate to determine the particular issue in the proceeding, the court must consider its effect upon the proceeding including: [¶] (A) Whether resolving that issue will unduly delay the disposition of the proceeding; [¶] (B) Whether other parties would need to be joined to make an effective judgment between the parties; (C) Whether resolving that issue will confuse other issues in the proceeding; and (D) Whether the joinder of a party to determine the particular issue will complicate, delay, or otherwise interfere with the effective disposition of the proceeding." (Rule 5.24(e)(2).)

Even if the criteria for permissive joinder is satisfied, joinder is not automatic and instead is left to the court's discretion. (*Schnabel v. Superior Court* (1994) 30 Cal.App.4th 758, 762–763.) "Because the determination of whether a person or entity

16.

must be joined as a party to a civil action is a case-specific inquiry that ' "weighs 'factors of practical realities and other considerations,' " ' a trial court's ruling on joinder is reviewed for abuse of discretion." (*Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1018; accord, *Schnabel v. Superior Court*, at p. 763.)  Whether the family court had jurisdiction to join a person to the proceeding, however, is subject to our independent review.  (*In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485.)

### B.      *Alfredo Controls Property Subject to Disposition*

In order to join Alfredo to the proceeding, he must claim or control an interest in any matter subject to disposition in the proceeding, namely, community assets. (*Schnabel v. Superior Court*, *supra*, 30 Cal.App.4th at p. 764.)  That is precisely the case here.  It is undisputed that Alfredo purchased Juan's shares in the Corporations, which were community property, half of which were awarded to Cendy in the judgment. Moreover, Alfredo claims he was a bona fide purchaser of the shares and therefore Cendy has no right to them.  Thus, Alfredo both claims and controls an interest in the shares that were distributed in the judgment.

Juan and Alfredo contend the family court lost jurisdiction over Cendy's shares once they were confirmed as her separate property in the judgment.  We disagree.  Once a dissolution judgment has been entered, it "may be enforced . . . by any other order as the court in its discretion determines from time to time to be necessary."  (Fam. Code, § 290.) Thus, the family court has the power to enforce the judgment by securing Cendy's share of the community interest in Juan's shares in the Corporations.  (*In re Marriage of Justice* (1984) 157 Cal.App.3d 82, 86; *Brown v. Brown* (1971) 22 Cal.App.3d 82, 83–84 [family court had jurisdiction to implement existing order in divorce judgment to divide stock].)

For this reason, Juan's reliance on *In re Marriage of Braud* (1996) 45 Cal.App.4th 797 is misplaced.  While the family court's jurisdiction over the parties' separate property is limited (*id.* at p. 810), here the family court was properly exercising jurisdiction over

community property that had been ordered to be divided in the judgment and which was in Alfredo's possession.

### C. It is Appropriate to Determine Cendy's Right to the Shares in this Proceeding

In order to join Alfredo to the proceeding, the family court was required to find "it would be appropriate to determine the particular issue in the proceeding," namely, Cendy's right to the shares Juan sold Alfredo. (Rule 5.24(e)(2).) The resolution of this issue turns on whether the family court had jurisdiction to hear the claims she raises against the brothers.

As we have stated, a family court retains jurisdiction to oversee and enforce its judgments by "execution, the appointment of a receiver, or contempt, or *by any other order as the court in its discretion determines from time to time to be necessary*." (Fam. Code, § 290, italics added.) "Thus, the Family Code generally confers on the trial court broad discretion to select appropriate enforcement remedies and terms; and, in exercising that discretion, to take the equities of the situation into account." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 18:1.5.) "To the extent that a judgment of dissolution is not self-executing in respect of any division of property therein ordered, the court retains jurisdiction to make such further orders as are appropriate to compel obedience to its judgment." (*Bonner v. Superior Court* (1976) 63 Cal.App.3d 156, 165.)

Here, Cendy is attempting to enforce the judgment that required the shares in the Corporations to be divided equally between herself and Juan. Juan, however, sold the shares to Alfredo and paid the proceeds of the sale to the IRS. In the complaint for joinder, Cendy disputes that Alfredo was a bona fide purchaser of the shares and that he purchased them at fair market value. She alleges Juan violated various provisions of the Family Code when he sold the shares to Alfredo, including that he transferred the shares to Alfredo without her consent in violation of Family Code sections 721, 2040, 2102, and

18.

he violated his duty of disclosure under section 2100, subdivision (c), when he adopted the minutes and sold the shares to Alfredo. She further alleges Alfredo knowingly participated in adopting the minutes and purchasing the shares, and "knowingly aided and abetted" Juan in violating those provisions.

In the prayer for relief, Cendy asks for various declarations that Juan wrongfully transferred the shares to Alfredo; Alfredo was not a bona fide purchaser of the shares and held the shares as a constructive trustee for Cendy's benefit; Juan converted her interest in the shares; Juan conspired with Alfredo, who aided and abetted Juan, to deprive her of her rightful property. Cendy also asks for delivery of the stocks or, if not available, their value; interest at the legal rate from the date of conversion; damages for loss resulting from the conversion and for the time and money properly expended in pursuit of the converted property; and punitive damages.

The family court certainly has the power to determine violations of the Family Code as alleged in the complaint. Moreover, under the family court's broad authority to enforce its judgments, if the family court determines Juan and Alfredo violated these provisions and wrongfully withheld the shares from Cendy, it has the power to disgorge any wrongfully withheld shares or money. Accordingly, it is appropriate for the family court to determine Cendy's right to the shares Alfredo purchased from Juan.

Juan and Alfredo contend the family court does not have the power to award Cendy compensatory or punitive damages. They are correct that a civil tort action, insofar as it claims damages, cannot be joined with a dissolution action, and causes of action seeking damages cannot be pleaded as part of the dissolution. (*In re Marriage of McNeill* (1984) 160 Cal.App.3d 548, 556, disapproved on other grounds by *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451, fn. 13; *Sosnick v. Sosnick* (1999) 71 Cal.App.4th 1335, 1339.)[9] While the complaint seeks both compensatory and

_____

[9] Such claims, however, when filed as a separate civil action, may be consolidated with a pending dissolution action, if the two actions involve common questions of law or

19.

punitive damages, that is not the only relief Cendy seeks. Since Cendy clearly seeks relief that is within the family court's power to provide, we leave it to the family court to address the appropriateness of these other remedies, either through demurrer or motion to strike.

Since the family court has jurisdiction to enforce its judgments under Family Code section 290, Alfredo's contention that the family court lacked jurisdiction to rule on the joinder motion is without merit. A family court may join a third party in family law proceedings for the purpose of enforcing the court's orders. (*In re Marriage of Wilson* (1989) 209 Cal.App.3d 720, 723 [joinder of labor union as a party in union member's dissolution action was proper where object was to obtain an order requiring the union to provide notice when referring the member for a job to enforce the member's obligation under a child support order].) Similarly, without merit is Alfredo's contention that the family court lacked jurisdiction to join him because the dissolution proceeding had concluded when the judgment was entered and Cendy failed to timely modify, set aside, or appeal that judgment. Although the family court denied Cendy's request to modify or set aside the judgment, Cendy sought to add Alfredo as a party to enforce the judgment as written, namely, to effect the in-kind distribution of the Corporations' shares to Cendy.

Alfredo argues postjudgment joinders are not authorized by rule 5.24 because rule 5.24 only applies to an ongoing action, not one that has been concluded by a final judgment. Alfredo asserts the term "proceeding" used in rule 5.24 means actions from the time of commencement to the entry of judgment, and therefore does not encompass postjudgment proceedings. Rule 5.2(b)(3), however, defines a "[p]roceeding" as "a court hearing in an action under the Family Code," including "a hearing that relates to the dissolution or nullity of a marriage." A motion to enforce the judgment pursuant to

---

fact. (*Sosnick v. Sosnick*, *supra*, 71 Cal.App.4th at p. 1339; *In re Marriage of McNeill*, *supra*, 160 Cal.App.3d at p. 556; Code Civ. Proc., § 1048.)

Family Code section 290 certainly falls within the definition of a proceeding, as it is a court hearing relating to the dissolution of a marriage. Therefore, rule 5.24 applies to such proceedings and allows the joinder of a party for the purpose of enforcing the judgment.

Juan asserts the complaint alleges a fraudulent conveyance cause of action under the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq.) (UVTA),[10] which "permits defrauded creditors to reach property in the hands of a transferee." (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 840–841.) He argues Cendy cannot state such a claim because the shares were not assets within the meaning of the UVTA and Cendy cannot prove she was injured by the transfer of shares, as the money from the sale was paid to the IRS to reduce debt she owed to the IRS. The complaint, however, does not allege such a claim. It does not refer to the fraudulent conveyance statute, Civil Code section 3439.04, subdivision (a), or allege the required elements.[11] For this reason, Juan's contention that allowing the family court to adjudicate such a claim would deprive him of his constitutional right to a jury trial is irrelevant.

### D.     *Alfredo is Necessary to Enforce the Judgment*

Finally, Juan and Alfredo argue Alfredo is neither indispensable nor necessary to enforce the judgment. We disagree. Alfredo is a necessary party because he possesses

---

**10**     The UVTA was formerly known as the Uniform Fraudulent Transfer Act. (Stats. 2015, ch. 44, § 3.)

**11**     Under Civil Code section 3439.04, subdivision (a), a transfer made by a debtor is voidable as to a creditor if the debtor made the transfer as follows: (1) "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor"; (2) "[w]ithout receiving a reasonably equivalent value in exchange for the transfer" and the debtor either: (a) was engaged, or was about to engage in, a business or transaction for which the debtor's remaining assets were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed the debtor would incur, debts beyond the debtor's ability to pay as they became due.

the community property shares in the Corporations that were in Juan's name and were divided between Juan and Cendy. Without joining him as a party, the family court would not be able to disgorge the shares from him should it find he and Juan acted wrongfully in transferring the shares to him.

Juan contends Alfredo is not necessary to effectuate the judgment because Cendy knew he was the majority shareholder when she sought to join the Corporations as parties and if Alfredo was truly necessary, he would have been joined as a party prior to the judgment being entered. Alfredo only became a necessary party, however, after he purchased the shares that were awarded to Cendy in the judgment, which occurred after judgment was entered. For this reason, Alfredo's contention that he was unnecessary because Cendy knew Juan had transferred some of his shares in the Corporations to Alfredo prior to entry of judgment, which made Juan a minority shareholder, is meritless. Cendy is not trying to challenge those transfers; rather, she is trying to enforce the division of Juan's minority shares, which occurred after entry of judgment.

Juan also contends by granting Cendy's postjudgment motion to join Alfredo to the action, the trial court has allowed her to indirectly attack the terms of the stipulated judgment. Juan complains that if Cendy is successful in her action, she would receive double relief in the form of her shares being returned to her while her tax liability remained paid. That is not a reason, however, not to join Alfredo to the action; rather, it shows why Alfredo is a necessary party, since he has possession of those shares and information concerning the sale of the shares to him. Juan also argues Alfredo is not a necessary party because Cendy seeks to recover her separate property shares of stock, which the family court does not have jurisdiction over. But as we explained above, the family court is empowered to enforce the judgment by securing Cendy's share of the community interest in Juan's shares in the Corporations. (*In re Marriage of Justice*, *supra*, 157 Cal.App.3d at p. 86.)

22.

In sum, Juan and Alfredo have not shown that the family court abused its discretion when it joined Alfredo as a party for the purpose of determining Cendy's right to the shares Alfredo purchased from Juan.

## II.     The Corporations' Appeal

The Corporations do not challenge the family court's joinder of Alfredo. Instead, they assert there is no basis to enforce the judgment against them. The Corporations contend the judgment is void as to them because it was entered without affording them due process of law, as neither they nor their attorney were present at the July 2015 settlement conference, and they did not have notice of the judgment prior to its entry. They also contend the judgment did not obligate them to do anything and could not be expanded to include new obligations relating to its enforcement. Instead, they argue, the judgment eliminated the Corporations and any issues involving them. Therefore, before an order may be entered against them relating to Cendy's motion to enforce the judgment, they must be rejoined as parties pursuant to rule 5.24, yet Cendy did not move to rejoin them and any attempt to do so would be inappropriate. The Corporations ask that we find the judgment is void as to them, and vacate and reverse the May 17, 2017 order as to them.

The Corporations were joined to the dissolution action to determine whether Cendy and the community were entitled to Juan's ownership interest in the Corporations and, if so, for the court to issue a declaration to that effect. In their answer, the Corporations denied Cendy had an ownership interest in them. A settlement conference was held prior to trial on the property issues in the dissolution action. The family court found the Corporations' attorney had notice of the settlement conference and an opportunity to be heard there, as he appeared for the settlement conference but elected not to participate. Juan and Cendy then entered into a settlement that required them to divide the shares Juan held in the Corporations in kind, which subsequently was entered as a judgment.

The Corporations now contend the judgment is void as to them because it was rendered without their participation or agreement citing *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336. While that case does state that "[a]n order rendered without an indispensable party is void as to that party," the court was referring to a situation where the indispensable party was not joined in the proceedings, and therefore was not before the trial court when the trial court issued an order concerning that party's rights. (*Id*. at p. 345.) In that situation, the trial court is without jurisdiction to adjudicate the party's rights, because the failure to join an indispensable party is a jurisdictional defect, which may be raised at any time. (*Ibid.*; see *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 214.) This rule has no application here, where the Corporations were joined as parties, and had both notice and the opportunity to participate in the settlement conference.

While the Corporations complain the judgment was entered without affording them due process of law, they had the opportunity to participate in the settlement conference that led to the judgment but declined to do so. This is not a situation as in *In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, where the family court issued an order beyond the scope of the notice given to a party. (*Id*. at pp. 953–954.) The complaint in joinder put the Corporations on notice of what Cendy was seeking, namely, a declaration that Juan's shares in the Corporations were community property, and the settlement resolved that issue with Juan and Cendy agreeing the shares were community property that would be divided in kind. The resulting judgment did not award relief in excess of what Cendy sought in the complaint for joinder.

The Corporations have not provided any basis for declaring the judgment void as to them. While the Corporations complain that the judgment is not enforceable because they did not consent to the settlement, the enforceability of the judgment is not properly before us. The Corporations only appealed from the May 17, 2017 order, which granted Cendy's motion to join Alfredo to the action. Although Cendy sought to join each

24.

corporation's stock transfer agent, the May 17, 2017 order did not include them and did not address anything with respect to the Corporations, including the enforceability of the judgment as to them, and did not order the Corporations to do anything. Since the order did not affect the Corporations, there is no basis to vacate the May 17, 2017 order as to them or to address the other issues the Corporations raise, including whether they are proper parties to the enforcement motion.

## DISPOSITION

The family court's May 17, 2017 order is affirmed. Costs on appeal are awarded to respondent Cendy Palacio.


DE SANTOS, J.

WE CONCUR:


FRANSON, Acting P.J.


PEÑA, J.